IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| **DARIQ KHOUREEM MYLES,**<br><br>**Plaintiff,**<br><br>vs.<br><br>**FRANKIE CONTRERAS, individually and in his official capacity as a law enforcement officer for the Iowa State University Police Department,**<br><br>**Defendant.** | **CASE NO.** 4:24-cv-00419<br><br>**COMPLAINT AND JURY DEMAND** |

**COMES NOW,** the Plaintiff, Dariq Khoureem Myles, by and through the undersigned, and for his causes of action, respectfully states the following:

## PARTIES

1.  Plaintiff Dariq Khoureem Myles (hereinafter "Dariq") was a United States citizen and resident of Ames, Story County, Iowa, at all times relevant to the events complained of herein.

2.  Defendant Frankie Contreras (hereinafter "Defendant Contreras") is believed to be a citizen and resident of Iowa and was employed as a law enforcement officer for the Iowa State University Police Department (hereinafter "ISUPD") at all times relevant to the events complained of herein.

## JURISDICTION AND VENUE

3. This court has subject matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3).

4. Venue is proper under 28 U.S.C. § 1391(b) as all events and omissions referenced herein occurred in the Story County, Iowa.

## FACTUAL BACKGROUND

5. Dariq is a 25-year-old African American and former Iowa State University student.

6. Defendant Contreras is a Caucasian-appearing male.

7. In the early morning hours of August 12, 2023, Defendant Contreras was on patrol northbound on Welch Avenue in Ames, Iowa, when he encountered a vehicle heading southbound, driven by Dariq.

8. Defendant Contreras decided to investigate a purported equipment violation, turned around, and pursued Dariq's vehicle.

9. Dariq's vehicle was headed eastbound on Chamberlain Street, turned into a parking lot just past the intersection of Chamberlain Street and Stanton Avenue, and pulled into an empty parking stall.

10. Defendant Contreras followed Dariq into the parking lot and activated his lightbar right as he pulled behind Dariq's vehicle.

11. Dariq opened his vehicle's driver's side door and stepped out after parking his vehicle in the parking stall.

12. Dariq's vehicle was completely blocked in, with a wall in front of his vehicle, parked vehicles on both sides, and Defendant Contreras parked behind him.

13. Defendant Contreras exited his vehicle and approached Dariq.

14. Dariq was standing inside the open driver-side door of his vehicle. Dariq was not angry or upset and did not act like he would run, obstruct, or resist Defendant Contreras in any way.

15. Dariq did not move away from his vehicle.

16. Dariq posed no reasonable risk to the officer's or public safety and did not pose a realistic flight risk.

17. Defendant Contreras approached Dariq and stood in such a manner that placed Dariq between his open door and the driver's seat.

18. Defendant Contreras explained to Dariq he was conducting a traffic stop and directed Dariq to sit back into his vehicle.

19. Dariq complied.

20. Dariq was cooperative and non-threatening to Defendant Contreras.

21. Defendant Contreras, on the other hand, squared up his shoulders like he was preparing for a fight while approaching Dariq.

22. Dariq perceived Defendant Contreras's open hostility and requested Defendant Contreras to get his sergeant because he felt uncomfortable due to Defendant Contreras's openly displayed aggression and hostility.

23. As a young African American male, Dariq was familiar with racial tension across the country and the spate of police killings of unarmed people of color across the country.

24. Immediately after Dariq's request for a supervising officer, Defendant Contreras ordered Dariq to stand up despite just ordering him to sit down four seconds earlier.

25. Defendant Contreras ordered Dariq to stand up in retaliation for Dariq's request for an on-site supervisor.

26. "If you don't fucking stand—all right, bro," Defendant Contreras told Dariq who stood and obeyed Defendant Contreras's command within fifteen seconds.

27. Defendant Contreras then advised Dariq, who was outside of his vehicle and standing, "If you don't stand up, I'm going to fucking tase you."

28. Dariq was not resisting and began to place his hands in the air demonstrating submission to Defendant Contreras's conflicting commands.

29. Approximately one minute and six seconds into their interaction—and with both of Dariq's hands in the air—Defendant Contreras goes hands-on.



30. Defendant Contreras physically grabbed Dariq by the waist, lifted him off the ground, and attempted to violently slam him onto the pavement before placing Dariq into a full nelson and tackling him to the ground.

 

5

 

31.    Dariq was not resisting Defendant Contreras during this hands-on encounter.

32.    While on the ground, Dariq repeatedly stated he had done nothing wrong and asked for help while screaming in pain.

33.    At one point, Defendant Contreras pinned Dariq down by placing his knee on Dariq and twisting Dariq's arm.

34.    Dariq pleaded with Defendant Contreras to get off of him, as he was in pain and injured.

35.    While on top of him, Defendant Contreras ordered Dariq to put his hands behind his back.

36.    Dariq informed Defendant Contreras he was not physically able to do so because of the manner Defendant Contreras had him pinned.

37. Dariq again requested Defendant Contreras to get his Sergeant and yelled for help.

38. In response to Dariq's request and his cries for help, Defendant Contreras stated, "I'm going to fucking tase you."

39. Defendant Contreras then told Dariq, who remained on the ground injured, to put "both hands behind your fucking back."

40. When Dariq said Defendant Contreras had his knee in Dariq's arm, Defendant Contreras responded, "[s]hut the fuck up and put your hands behind your goddamn back."

41. Defendant Contreras handcuffed Dariq, and other officers arrived at the scene.

42. Dariq requested help for his injuries from the other officers.

43. Dariq was arrested and charged with Interference with Official Acts Causing Bodily Injury and cited for window tint.

44. On January 17, 2024, Dariq appeared in the Iowa District Court for Story County for a jury trial on the charges.

45. After the close of evidence, Dariq's attorney moved for a directed verdict.

46. The court correctly noted that Defendant Contreras' hostile demeanor and that actions were unreasonable.

47. The court correctly concluded the "so-called "resistance" was entirely and completely the product of Officer Contreras's verbal and physical assault on Dariq.

48. After reviewing the videos and hearing sworn testimony from Defendant Contreras, the Honorable Judge stated, "[t]here are occasions after 27 years where I am still shocked to the core by what I see. This is one of those days. I'm stunned that this came to trial. There is no proof of resistance here. There's proof of a lot of things. A lot of things. To submit this matter to a jury and have Mr. Myles convicted would be a gross injustice in my opinion…"

49. The court granted Dariq's motion for directed verdict and dismissed the charges even before submitting the case to the jury for deliberation.

50. Defendant Contreras's traffic stop and interaction with Dariq were captured on Defendant Contreras's dash camera and body worn camera.

51. Defendant Contreras had full access to the video recordings and events captured on his dash camera and body worn camera after his encounter with Dariq.

52. Defendant Contreras exhibited no patience, failed to communicate clearly, and escalated the situation.

53. Dariq suffered serious injuries as a result of Defendant Contreras's use of unreasonable and excessive force including a large labral tear to Dariq's shoulder that required surgical repair and considerable physical therapy.

54. As a result of the use of excessive force by Defendant Contreras, Dariq suffered and continues to suffer from physical injuries, loss of use and function, and permanent disfigurement.

55. As a result of the use of excessive force by Defendant Contreras, Dariq suffered and continues to suffer from mental and emotional distress.

56. As a result of the use of excessive force by Defendant Contreras, Dariq suffered and continues to suffer from lost employment opportunities.

## CAUSES OF ACTION

### COUNT I
### CIVIL RIGHTS VIOLATION UNDER 42 U.S.C § 1983
### VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE
### UNITED STATES CONSTITUTION
*Right To Be Free From Excessive Force*

57. Plaintiff repleads all preceding paragraphs as if fully set forth herein.

58. Defendant Contreras is a person for the purpose of a 42 U.S.C. § 1983 action of damages.

59. At all material times, the actions and omissions of Defendant Contreras were made under the color of authority and law as a law enforcement officer for the Iowa State Police Department.

60. On or about August 12, 2023, Defendant Contreras violated Plaintiff's clearly established constitutional rights by using excessive force in the arrest of the Plaintiff.

61. Defendant violated Plaintiff's right to be free from excessive force under the Fourth and Fourteenth Amendments to the United States Constitution.

62. Defendant Contreras's actions were objectively unreasonable given that the alleged crime at issue was a purported window tint violation, Dariq posed no imminent threat to Defendant Contreras or others' safety, Dariq was not actively resisting or attempting to evade arrest and was complying with commands.

63. Defendant's use of force against Plaintiff was excessive, unreasonable, and unnecessary under the circumstances, resulting in severe injuries to the Plaintiff.

64. Defendant demonstrated a deliberate indifference to and in reckless disregard of Plaintiff's civil and constitutional rights by his use of excessive force.

65. Defendant's actions were willful, wanton, unlawful, and in gross disregard of Plaintiff's civil rights, justifying an award of punitive damages.

66. As a direct and proximate result of Defendant's illegal and unjustified conduct, Plaintiff has suffered and will in the future suffer and incur the following damages:

    a. Actual and compensatory damages, including by not limited to past and future: medical expenses, loss of function of mind and body, pain and suffering, emotional distress, lost wages, and all other allowable damages yet to be determined;

    b. Compensation for violation and deprivation of his constitutional rights, mental anguish, and humiliation;

    c. Consequential damages;

    d. Plaintiff's cost in this action, including reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988;

    e. Punitive damages; and

    f. Any other damages as allowed by law or relief the Court deems just and equitable.

**WHEREFORE**, Plaintiff requests Judgment against the aforementioned Defendant as follows:

    a. Actual, Compensatory, Consequential, and all other allowable damages against Defendant in an amount yet to be determined;

    b. Plaintiff's cost in this action, including reasonable attorney's fees and costs pursuant to 42 U.S.C. 1988;

    c. Punitive damages; and

    d. Any other damages as allowed by law or relief the Court deems just and equitable.

## JURY DEMAND

**COMES NOW,** the Plaintiff, and hereby demands a jury trial for all counts pled in this Complaint.

**PARRISH KRUIDENIER, L.L.P.**

BY: _____
    Brandon Brown        AT0001199
    Carly Scott           AT0015326
    2910 Grand Avenue
    Des Moines, Iowa 50312
    Telephone: (515) 284-5737
    Facsimile: (515) 284-1704
    Email: bbrown@parrishlaw.com
           cscott@parrishlaw.com
    **ATTORNEYS FOR PLAINTIFF**